UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

VS. CR 07-100-4 S

OMAR ALTAMIRANO-NUNEZ
a/k/a Juan Carlos Diaz Delgadillo,
a/k/a Burras, and
IDELFONSO BETANCOURT-RODRIGUEZ,
a/k/a Chaco, and
RAFAEL FERNANDEZ-ROQUE,
a/k/a Rafael Hernandez-Roque, and
ADOLFO VERDUGO and
JUAN MANUEL CASILLAS

**MEMORANDUM IN SUPPORT OF**
**MOTION TO REVOKE OR AMEND DETENTION ORDER**

I. INTRODUCTION.

The salient fact underlying this Motion is that the United States District Court in Los Angeles released the Defendant once he posted $250,000 bail by pledging the home which he and his wife own in Pomona, California. He flew from Los Angeles to Providence on Labor Day without escort and with his ankle bracelet removed. He had ample opportunity to flea, but he did not. His own post arrest conduct is compelling evidence that the Court can trust him to comply with conditions of release.

The transcript of the detention hearing which occurred on September 4 is being prepared. It is not available as of the dictation of this Memorandum

II. PERTINENT FACTS.

The evidence here consists of documents, the Defendant's evident post release conduct, the representations of the Assistant United States Attorney at the detention hearing, and the testimony before Magistrate Judge Almond of Michael Naylor, a Newport officer detailed to the joint drug task force and acting with some kind of authority delegated from the Drug Enforcement Agency.

The Defendant is a United States citizen, born in 1966, who immigrated to the United States. He resides with his wife (who speaks only Spanish) and three children (aged 14, 7 and 5) in Pomona, California. He owns and operates an International Harvester tractor and earns his family's living as a tractor trailer driver throughout the country.

According to Officer Naylor, on May 30, 2007 officers observed the Defendant park his tractor-trailer at a rest stop near the intersection of I84 and I90 in Massachusetts. How "near" was never established. They observed two other vehicles --- presumably cars --- enter the rest stop, stop, and then depart. After the cars had left, officers stopped them on Route 146 southbound and found 29 kilograms of cocaine in one or both of the vehicles.

After the vehicles had left the rest stop, officers took the Defendant into custody. They placed him on the ground and presumably hand cuffed him. A dog trained to detect narcotics, perhaps from the Massachusetts State Police, inspected Mr. Verdugo's tractor-trailer. The dog found nothing to indicate the presence of narcotics.

The agents had monitored a telephone call in which one of the communicants said that they would meet "where the Simpsons live." Officer Naylor said that the phrase indicated Springfield, Massachusetts. After the officers had taken Mr. Verdugo into custody, an officer telephoned the number to which the monitored telephone call had been made. A cell phone in Mr. Verdugo's truck rang.

Despite all of these events, the officers released Mr. Verdugo. There is no known prosecution in Massachusetts, and the Defendant has not been presented to a Massachusetts court. Presumably, he was allowed to get back into his tractor-trailer and to complete his deliveries.

Officer Naylor testified that the Defendant was not arrested because the officer did not want him to know the occupants in the cars had been arrested.

The indictment here was filed on July 11. A group of officers, including Officer Naylor, an Officer Michaud of the Pomona, California Police Department, officers of the Los Angeles County Sheriff's Department, and perhaps special agents of the DEA, arrested Mr. Verdugo as he drove his automobile on a street in Pomona, California. The arrest occurred at 12:20 P.M. on July 25, 2007.

On July 26 at 2 P.M., the Defendant appeared before the Honorable Victor B. Kenton, a United States Magistrate Judge in the Central District of California. Luis Rodriguez was appointed as Spanish language interpreter for the hearing. Assistant United States Attorney Sarah Baxter represented the Government. The court set bail in the amount of $250,000, which the Defendant satisfied with a pledge of his home (after suitable appraisals) on July 31, 2007.

Mr. Rodriguez certified in writing that he translated the bail documents to the Defendant, and that the Defendant stated he understood them.

The conditions of bail required the Defendant to wear an ankle bracelet monitor, which was removed so that he could travel via Southwest Airlines from Ontario, California to Providence. He traveled on SWA Flight No. 859 on September 3.

According to telephone inquiry to the ticketing service of SWA as this Memorandum was being dictated, the aircraft stopped both in Nashville and Baltimore before arriving in Providence. If the Defendant had departed the plain to visit a restroom and had not returned in time for the aircraft's departure, the plane would simply have left without him and with no effort to find him.

The Defendant arrived in Providence at 7:25 P.M on September 3 and checked into a motel. On the morning of September 4, the Defendant appeared at the U. S. Probation Office in the Pastore Building. He then walked into the courtroom.

At the detention hearing, the Government presented the testimony of Officer Naylor and relied upon the presumption of flight arising under the Bail Reform Act. Officer Naylor, as described above, specifically stated that he did not witness a transfer of the twenty-nine kilograms of cocaine from the Defendant's tractor-trailer. Officer Naylor did testify, however, to the additional items.

First, he said that the arrest of the people who possessed the twenty-nine kilograms of cocaine occurred after they had left the rest stop so that the Defendant would not know of that event.

Second, he said that immediately after Defendant's arrest in California, as the Defendant was either standing by his own car or sitting in a police cruiser, he interrogated the Defendant. He gave Miranda warnings in English, not Spanish. He said that the Defendant gave a "confession" (Officer Naylor's words) that he had been involved with the twenty-nine kilograms. Although a Pomona officer (part of the surveillance team) was nearby, only Officer Naylor heard this "confession."

Later, at the Pomona, California police station, in an interview room which the Defendant did not know was monitored on video and sound recording tape, Officer Naylor again gave Miranda rights in English. The Defendant at this time indicated he wanted to speak to a lawyer. The officer then continued the conversation in order to have the Defendant acknowledge the confession which had occurred by the police cruiser.

There were representations by the Government that the Defendant had siblings in Mexico but that his mother also lived with his own family in Pomona.

III. APPLICABLE POINTS OF LAW

1. The Bail Reform Act establishes a rebuttable presumption that someone charged with a serious drug offense is likely to flee before trial. The defendant has the burden of producing evidence to rebut the presumption, but the presumption does not shift the burden of persuasion to the defendant. The burden of persuasion always remains with the Government. In such a case, the presumption is merely a fact or finding which must be weighed with the other statutory factors to be considered under the Act in assessing the risk of flight in a particular case. The amount of weight given to the presumption depends upon how closely the facts of a particular case resemble the

paradigm underlying the presumption Congress created. *United States v Jessup*, 757 F.2d 378 (1st Cir., 1985); *United States v. Valdivia*, 104 Fed. Appx, 753, 754, 2004 WL 1636021 (1st. Cir., 2004).

2. A party in a bail hearing must put forth his best factual case at his bail hearing. He does not have a right to a second hearing in order to put forward facts and circumstances in support of bail which were known to him at the time of the first hearing. *United States v. Dillon*, 938 F.2d 1412 (1st Cir., 1991).

3. The factors to be weighed in determining whether bail is to be granted are the following:

> “**(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.” 18 U.S.C. § 3142(g).

## IV. ARGUMENT

### A. The Defendant’s own conduct since May 30, 2007 demonstrates he will appear for trial.

The Defendant has presented more than sufficient evidence to rebut the presumption of flight; and in light of all of the evidence available to the Magistrate Judge, the previously set bail of $250,000 coupled with electronic monitoring is isufficient to guarantee the Defendant’s appearance for trial.

If this Defendant were involved in the charged conspiracy, he had to have had knowledge he was under suspicion on May 30, 2007. He had more than ample

opportunity from the moment police and agents removed him from the cab of his truck, placed him on the ground, had his truck searched by a drug detection dog, and was subsequently released to have fled to Mexico. On the assumption that the "defendant has ties to Mexico and has traveled there twice in 2007" as found by the Magistrate Judge, he could easily have made a third trip to Mexico after May 30 to avoid arrest and appearance in this Court.

He had three other opportunities to flea after his arrest: once when his aircraft landed in Nashville en route to Providence, once when it landed in Baltimore, and upon arrival in Providence at 7:25 P.M. the day before his 2 P.M. arraignment.

The Government has from time to time conducted surveillance upon the Defendant since May 30.[1] If there had been any indication that he was intending to flea, the Government surely would have arrested him. The Government did not, and the inference is that there was no indication he would flea.

The Defendant's own conduct since May 30 has amply demonstrated that he will not flee; and the $250,000 bail set in Los Angeles has proved efficient in assuring his appearance in this Court.

B. The Government's introduction of evidence previously available to it at the Los Angeles bail hearing violated the case law of this Circuit.

The additional evidence, the testimony of Officer Naylor about the stop on May 30 and the Defendant's alleged confessions in California, was known to the Government and available to the Government for the detention hearing in California. At the hearing before Magistrate Judge Almond, the Assistant United States Attorney argued that she did not know what the Assistant United States Attorney in Los Angeles knew about the background. That argument misses the point.

Officer Naylor was present at the May 30 stop of the Defendant's truck. He personally obtained the alleged confession in California. He knew about this additional evidence, and it is incomprehensible that he did not brief the Assistant United States Attorney in Los Angeles about it.

The Circuit has spoken clearly. A defendant cannot renew an application for bail, previously denied, on the basis of previously available evidence he did not offer. The same rule holds for the Government. Otherwise, either a defendant or the Government could relentlessly apply for bail, always grasping at new snippets of evidence which are mere restatements of previously examined data, until the applicant finds a sympathetic judge.

---

[1] This assertion of post May 39 surveillance is based on counsel's memory of the detention hearing testimony and notes.

The Government had its "shot" at establishing a need to hold the Defendant without bail in Los Angeles. It failed to convince a Magistrate Judge of the need. Holding a detention hearing in Providence without presentation of evidence unavailable in Los Angeles violates the rule of *United States v. Dillon*, 938 F.2d 1412 (1st Cir., 1991).

Indeed, the rule set forth in *Dillon* is really nothing more than a restatement in the context of the Bail Reform Act of the ancient rule, Rule of the Case.

C. <u>When viewed in context of factors set forth in the Bail Reform Act, the evidence to date does not show a need for bail, even in the context of the rebuttable presumptions</u>.

1. <u>Nature and circumstances of the alleged offense</u>.

The proffered evidence of the alleged offense as it involves this Defendant is limited to the following: his truck was observed at about 2:30 A.M. in a rest stop on an interstate highway at a time when other vehicles were present; and later, at a different location, alleged cocaine was seized from one or more of the other vehicles. No one observed a transfer. No one heard a conversation. An inspection by a trained drug dog revealed no trace of narcotics.

Also, later someone dialed a cell phone number; and a cell phone in the Defendant's truck rang. There is no evidence that the previously dialed call to that cell phone ("where the Simpsons live") involved this Defendant, that the cell phone was in the Defendant's truck when the call was made, or when the call was made.

The evidence presented before the Magistrate Judge is preciously close to evidence of mere presence

2. <u>The weight of the evidence</u>.

The argument set forth above about the nature and circumstances also bears upon the weight of the evidence.

The only additional evidence relates to the alleged confession.

Officer Naylor presumably knew that the Defendant's working language is Spanish. The Defendant's arrest was not a matter of happenstance. It was coordinated, involved officers from the Pomona Police Department and the Los Angeles County Sheriff's Department.[2] It is common knowledge that California has a large Latino community, and it is inconceivable that the arrest team did not have a Spanish speaking officer specifically to advise the Defendant under *Miranda* or to translate accurately Officer Naylor's questions and the Defendant's responses.

---

[2] Involvement by the Sheriff's Department is evinced in documents filed in the United States District Court, Los Angeles.

It is worth noting in this context that both the hearing before Magistrate Judge Almond and the hearing in Los Angeles required the assistance of a certified Spanish interpreter. No one would suggest that a criminal proceeding in this Court --- formal, dignified, progressing at a deliberate pace ---- would have essential elements of fairness to comply with due process if the defendant spoke no English and there were no interpreter. How much more defective are The administration of *Miranda* warnings and a subsequent interrogation of a Spanish speaking prisoner by an English speaking officer, in a police car, with the defendant presumably in handcuffs, is all the more defective.

Asking how much English the Defendant could understand under the circumstances of the interrogation is akin to asking how blue is the sky or how wet is the water. The myriad questions surrounding the interrogation of the Defendant need not be examined here, but they certainly will be examined at length in a motion to suppress. The circumstances are described here, however, to show that there are significant questions surrounding the interrogation

It could be argued that Officer Naylor's continuing the interrogation in the Pomona Police Department after the Defendant had requested a lawyer suggests an insensitivity on the Officer's part to the importance of giving Miranda warnings effectively.

In short, the alleged "confession" (in Officer Naylor's words) does not contribute significantly to the weight of the evidence against this Defendant.

3. <u>History and Characteristics of the Person</u>.

The Magistrate Judge in his written findings acknowledged that the Defendant has strong financial and personal ties to California but that he also has ties to Mexico and traveled there twice in 2007.

The ties to California are his wife, his three children, his Mother, his house, and his business (he owns the tractor he drives to support his family). He left Mexico at least sixteen years ago, and he is so strongly committed to this country that he became a United States citizen in 2000. His only connection to Mexico is that his siblings are there. There is absolutely no suggestion that the siblings in Mexico would welcome, let alone assist, the Defendant in fleeing the United States. As a general proposition, human beings if forced to choose between siblings and their spouses and children generally chose the latter.

The mere fact that this Defendant has siblings in Mexico and has visited there twice in 2007 does not weigh heavily to suggest that he would flee.

4. The other facts described in 18 U.S.C. 3142(g).

The Defendant has no criminal record or record of arrests, other than a single arrest by the Texas Highway Patrol in July 2006. (Efforts to learn the details of that arrest and whether there has been any prosecution have been frustrating both to the Pretrial Investigator at United States Probation and counsel.) The Magistrate Judge stated that the Texas arrest had minimal effect on his decision to deny bail. Defendant has no record of alcohol or drug abuse. There is nothing to suggest that this Defendant is violent or a danger to the community.

5. Statutory Minimum Sentence

The Magistrate Judge identified the ten year minimum sentence applicable to this Defendant if he is found guilty. However, it appears at first glance that this Defendant is eligible for "safety valve" sentencing under 18 U.S.C. §3553(f) since he will have no criminal history points, used no threats of violence and used no weapon in connection with the alleged offense, and was neither an organizer, leader, manager or supervisor of the alleged operation. As described by Officer Naylor, his conduct shows that he was only a minor participant. In short, even at a conviction after trial, there is no certainty that his minimum sentence would be ten years.

6. Available supervision in Los Angeles.

Defendant's release in Los Angeles required him to wear an ankle monitor. The monitoring system available in Los Angeles, according to the United States Probation Officer during the initial interview in Providence, involves G.P.S. monitoring. Like the G.P.S. monitoring available on certain new automobiles and cell phones, it provides immediate, real time identification of a defendant's location. Hence, if he leaves the area where he is to remain, it provides an immediate alert to Probation authorities. This procedure presumably is still available for monitoring this Defendant when he is released on bail to return to Los Angeles.

## VI. CONCLUSION.

For the above reasons, the Court should grant bail to the Defendant on essentially the same terms and conditions set by the United States Magistrate in Los Angeles.

Date: September 11, 2007

Respectfully submitted,

/s/ William T. Murphy
William T. Murphy (Reg No. 1201)
William T. Murphy Law Offices, Inc.
312 Turks Head Building
PO Box 9623
Providence, RI 02940-9623
Tel: 401-459-6700

FAX: 401-751-5931
Email: wtm@wtmurphy.com

Certificate of Service

I certify that on ______ I served a copy of the above ______________upon Assistant United States Attorney Mary Rogers, 50 Kennedy Plaza, Providence, RI 02903 by regular mail, or hand delivery, or fax transmission to 401-709-5001.

_________________________