IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>vs.<br><br>ADOLFO VERDUGO<br>Defendant | CR07-100-04S |

**DEFENDANT ADOLFO VERDUGO'S POST-HEARING MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPRESS ORAL AND TANGIBLE EVIDENCE**

**INTRODUCTION**

In connection with the above matter Adolfo Verdugo has filed a motion to suppress alleged oral and tangible evidence arising out of two encounters with law enforcement officials. Along with the suppression motion Mr. Verdugo submitted a pre-hearing memorandum of law which cited the legal authorities in support of his motion. Recently, in order to resolve the motion to suppress the court heard testimony over five days from nine witnesses and admitted approximately 47 full exhibits into evidence. This post-hearing memorandum of law seeks to supplement the pre-hearing memorandum by incorporating into the legal analysis

the testimony and exhibits elicited at the suppression hearing.

**Burdens, Scope and Standard of Review**

Once a defendant files a motion to suppress, the burdens of production and persuasion shift to the government. The defendant bears no burden. Where, as here, the government relies on consent to search as a lawful basis for a warrantless search, "the government has the burden of proving by a preponderance of the evidence that the search was made pursuant to a voluntary consent." United States v. Gaviria, 775 F.Supp. 495, 497 (D.R.I.)(citing United States v. Matlock, 415 U.S. 164 (1974)). "In determining whether or not consent to search was freely given, the Court must look at the 'totality of the circumstances' surrounding the procurement of consent." Gaviria at 497 (citations omitted)

In this case, a review of the totality of circumstances surrounding the initial stop of Mr. Verdugo in the early morning hours in Holyoke Massachusetts shows that no voluntary consent to search the tractor cab was given and all items seized - the cell phones - must be suppressed. Furthermore, from the very first moments police interacted with Mr. Verdugo in Massachusetts, he was in custody and all statements made by Mr. Verdugo must be

suppressed as violations of Mr. Verdugo's Miranda rights. Finally, because Mr. Verdugo's statements and cell phones were obtained unlawfully, no lawfully obtained evidence remains to establish probable cause that Mr. Verdugo committed any crime. Therefore, the arrest warrant that issued against Mr. Verdugo was and remains invalid making the entire California encounter unauthorized and rendering any evidence so gathered suppressible under the teachings of Wong Sun v. United States, 371 U.S. 471 (1963).

Although nine witnesses testified at the hearing on the motion to suppress, this memorandum will focus on the testimony and actions of three witnesses: Thomas Nartowicz, Daniel MacIsaac and Michael Naylor.

**MASSACHUSETTS**

Thomas Nartowicz and Daniel MacIsaac were the key players in the Massachusetts encounter.

**Nartowicz**

Thomas Nartowicz is a twenty-one year veteran trooper with the Massachusetts State Police. (Tr. vol. 2, p. 37) Trooper Nartowicz was the first police officer to encounter Mr. Verdugo at the rest stop in Holyoke. Trooper Nartowicz testified that on May 30th, 2007 he received a phone call from Sergeant John Brooks from the state police during which Sergeant Brooks asked Trooper Nartowicz to assist in

a DEA drug investigation (Tr. vol 2, pp 38,60). Trooper Nartowicz had no prior familiarity with the investigation. (Tr. vol 2, p 39). Trooper Nartowicz was not given any information that any individuals were armed or dangerous. (Tr. vol 2, p 62) Trooper Nartowicz had no information regarding the identity of any individuals nor did he have any information regarding the physical descriptions of any individuals. (Tr. vol 2, p 62). Trooper Nartowicz testified that he was told to look for a California registered vehicle. (Tr. Vol 2, p 45-46). Trooper nartowicz testified that he had been told the DEA was interested in tractor-trailers. (Tr. Vol 2, p 44) At approximately 3:50am Trooper Nartowicz was requested to identify persons in a tractor-trailer. (Tr. vol 2, p 62)

Trooper Nartowics testified that he proceeded to the Holyoke rest area and after arriving there waited for about five minutes for a uniformed patrol officer for assistance which arrived in the person of Trooper Wyckoff. Tropper Nartowicz was in plain clothes. (Tr.Vol 2,p 38). Once assisted by uniformed Trooper Wyckoff, Trooper Nartowicz went into the rest area and observed two tractor-trailers. After checking out the first tractor-trailer Troopers Wyckoff and Nartowicz approached a second tractor-trailer. (Tr. Vol 2, p 47) Trooper Nartowicz noticed a California

registration on the tractor and that the engine was warm. (Tr. Vol 2, p 47). Trooper Nartowicz observed one individual inside the tractor who exited the cab upon commands by Troopers Nartowicz and Wyckoff. (Tr. Vol 2, p 47). Then another individual was observed inside the cab and this individual was commanded to exit the cab. Both individuals fully complied with the officers' commands. (Tr. Vol 2, p 48). Trooper Nartowicz had his gun drawn the the time of the initial encounter with the individuals. (Tr. Vol 2, Tr. 63).

After exiting the cab, the two individuals were handcuffed and placed on the curb area on the side of the tractor-trailer. (Tr. Vol 2, p 66). Once the occupants had exited the cab and were seated while handcuffed nearby, Trooper Nartowicz conducted a "quick sweep of the interior of the cab." (Tr. Vol 2, p 48) Nothing unusual was obtained or observed during this initial search of the cab. A subsequent K-9 search of the cab produced no alerts.

The two individuals were identified as Adolfo Verdugo, the owner of the tractor-trailer, and Esteban Arias-Cortez, the driver.

**MacIsaac**

Daniel MacIsaac is a group supervisor with the DEA in Providence who has worked for the DEA for over 25 years.

(Tr. Vol 4, p 4-5). Mr. MacIsaac was working on the investigation which led him at arrive at the Holyoke rest area in the early morning hours of May 30, 2007. (Tr. Vol 4, p 8) Mr. MacIsaac arrived at the rest area after Troopers Nartowicz and Wykoff had already arrived. Mr. MacIsaac arrived at the rest area accompanied by Special Agent Anthony Cardello and task Force Agent Chris Francesconi. (Tr. Vol 4, p 8). Mr. MacIsaac first learned of Mr. Verdugo on May 30, 2007. (Tr. Vol 4, p 5)

When Mr. MacIsaac arrived at the rest area he spoke with Mr. Verdugo and Mr. Arias-Cortez while they were handcuffed and seated on the curb. Mr. MacIsaac testified that he asked Mr. Verdugo if it would be okay to look through his truck and that Mr. Verdugo said it was okay. MacIsaac and Agent Franseconi then climbed into the truck and recovered four cell phones. (Tr. Vol 4, p 14).

MacIsaac testified that he had been talking with Agent Naylor who was going to call a phone number that the government claims had been intercepted during the investigation. Some time after this conversation one of the two phones that were in MacIsaac's hand rang. (Tr. Vol 4, p 15) The ringing phone was not answered.

**LEGAL ANALYSIS**

The thrust of Mr. Verdugo's argument is that Troopers Nartowicz and Wyckoff effected not a formal but a *de facto* arrest without the requisite probable cause and during the course of this de facto arrest then developed what may be considered to be probable cause after arresting Mr. Verdugo. It is axiomatic that hindsight may not be employed in determining whether a prior arrest or search was made upon probable cause. If the action was taken without a warrant, the information to be considered is the totality of facts available to the officer at the time of the arrest or search." 2 W. LaFave, Search and Seizure (4th Ed. 2004) §3.2(d) at 47 (footnotes omitted). Facts that become known to the police subsequent to an arrest or search are irrelevant to a probable cause determination. In this case, while the police officers may have had articulable suspicion to approach Mr. Verdugo at the Holyoke rest area, they did not possess probable cause to search or arrest him or his vehicle.

Under Terry v. Ohio, 392 U.S. 1 (1968) a police officer may temporarily detain, or stop, a person without the presence of probable cause to believe the person has committed a crime when observation of unusual conduct leading to a reasonable suspicion that criminal activity may be afoot based on specific and articulable facts.

"Reasonable suspicion" involves something less than probable cause.

Under the facts presented here none of the police officers present in Holyoke had any specific information connecting Mr. Verdugo or Mr. Arias-Cortez to any criminal activity. While the officers may have been justified in approaching the vehicle based on wiretap information, they did not have probable cause to arrest or search either Mr. Verdugo or Mr. Arias-Cortez. Furthermore, the police officers did not have Mr. Verdugo's voluntary consent to search his vehicle or voluntary waivers of his Miranda rights. Once Mr. Verdugo was handcuffed he appeared to have acquiesced to the police officers demands. Acquiescence to a claim of lawful authority is not valid consent. Bumper v. State of North Carolina, 391 U.S. 543 (1968). Furthermore, the police officers never indicated to Mr. Verdugo that he had a right to withhold his consent.

**CREDIBILITY AND THE LANGUAGE BARRIER**

It is not Mr. Verdugo's contention that the police officers who testified at the suppression hearing presented any provably false testimony. Mr. Verdugo expects the court to credit most of the police testimony as credible. Rather, Mr. Verdugo's primary contention is that the officers were

overly aggressive and not thorough enough to satisfy the constitutional safeguards afforded to Mr. Verdugo under the Fourth Amendment. Mr. Verdugo also expects the court to find his testimony credible as the vast majority of his testimony corroborated the police testimony. The most important factual dispute appears to be on the point of whether Mr. Verdugo was Mirandized either in Massachusetts or California. Mr. Verdugo testified that he was not Mirandized in either location. Trooper Nartowicz testified that he Mirandized Mr. Verdugo in Massachusaetts and Agent Naylor testified that he Mirandized Mr. Verdugo in California. This dispute appears to stem from miscommunications related to the language barrier in this case.

Mr. Verdugo's native language is Spanish and the entire suppression hearing occurred with the assistance of English-Spanish translators. ICE agent Arnold testified that he was trained in Spanish and that he in fact Mirandized two other defendants in this matter in Spanish on May 30, 2007. This event indicates that the government had ready and immediate access to translators so that the extra amount of effort required to communicate with Mr. Verdugo in his native language would have been minimal. This failure alone does not render the police officers

behavior unreasonable but it contributes to a finding of unreasonableness when considered along with the remaining totality of circumstances.

The strongest evidence in support of the contention that Mr. Verdugo either was not Mirandized, or if he had been Mirandized he did not sufficiently understand his rights, resides on the video placed into evidence by Mr. Verdugo as defense exhibit F full. This exhibit clearly shows Mr. Verdugo struggling to communicate in English. Moreover, this booking video represents the only undisputed account of Mr. Verdugo being Mirandized. The video also shows that immediately upon completing the waiver form and hearing Agent Naylor ask about the Massachusetts encounter, Mr. Verdugo clearly and unequivocal invoke his right to counsel. In fact, Mr. Verdugo repeated his invocation. Following Mr. Verdugo's invocation of his right to counsel Agent Naylor attempted to ask more questions. When he testified, Agent Naylor attempted to draw a distinction between asking new questions and merely confirming answers to prior questions. (Tr. Vol 3, 174-75). Mr. Verdugo is not aware of any caselaw that countenances this sort of distinction and points to this behavior as overzealous police work. This episode calls into question Agent Naylor's judgment, if not credibility, and lends support to

Mr. Verdugo's contention that he was not Mirandized by Agent Naylor in California and that he made no confession to Naylor in California.

Additional facts and legal authorities will be supplied to the court at the oral argument scheduled for next week.

## CONCLUSION

For the foregoing reasons, Mr. Verdugo respectfully requests that this court grant his motion to suppress.

Respectfully submitted,
Adolfo Verdugo
By his attorneys,

/s/ Joseph J. Voccola
Joseph J Voccola, Esq. #4132
454 Broadway
Providence RI 02903
Phone (401) 751-3900
Fax (401) 751-8983

/s/ John F. Lusi
John F. Lusi, Esq. #4949
128 Dorrance St., Suite 400
Providence RI 02903
Phone (401) 274-6200
Fax (401) 274-6201
jlusi@cox.net

Certificate of Service

We, the undersigned, hereby certify that on the 8th day of February, 2008 we caused a true copy of the within memorandum of law to be filed, via electronic case filing, to the following counsel of record:

Assistant U.S Attorney Mary Rogers
Office of the United States Attorney
50 Kennedy Plaza, Fleet Center, 8th Floor
Providence RI 02903
mary.rogers@usdoj.gov

usariecf@usdoj.gov

/s/ Joseph J. Voccola
Joseph J Voccola, Esq. #4132
454 Broadway
Providence RI 02903
Phone (401) 751-3900
Fax (401) 751-8983
sue@joevoccolalawoffices.com

/s/ John F. Lusi
John F. Lusi, Esq. #4949
128 Dorrance St., Suite 400
Providence RI 02903
Phone (401) 274-6200
Fax (401) 274-6201
jlusi@cox.net